IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHERIE JOHNSON,
an individual on behalf
of herself and all persons
similarly situated,

     Plaintiff,

v.                                    Civil Action No. 3:22cv190

OPPORTUNITY FINANCIAL, LLC,
a limited liability company,
<u>et al.</u>,

     Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO COMPEL ARBITRATION (ECF No. 17) (the "Motion") filed by the Defendant Opportunity Financial, LLC ("Opportunity Financial"). For the reasons set forth below, the Motion will be granted.

## BACKGROUND

### I. Factual and Procedural Background

Plaintiff, Sherie Johnson ("Johnson"), filed a Class Action Complaint and Demand for a Jury Trial regarding two loans allegedly issued by Defendant, Opportunity Financial. Compl. ¶ 178 (ECF No. 1). Johnson's substantive claims center around the interest rate (160%) associated with her loans and Opportunity Financial's

alleged subterfuge in issuing them. Id. at ¶¶ 1-12. The loans are attached to the Complaint as Exhibit A (ECF No. 1-02) and Exhibit B (ECF No. 1-03). Opportunity Financial denies that it issued the loans and does not concede that the interest rate is as alleged. Answer ¶¶ 1-3 (ECF No. 19). Johnson is bringing the lawsuit as a Class Action under Federal Rule of Civil Procedure 23. Compl. ¶ 101.

On September 28, 2022, the Court held a hearing on the Motion. Minute Entry for 9/28/2022 (ECF No. 34). After the hearing, the Court ordered additional briefing on the question of Utah choice-of-law rules which the parties filed. Order for Supp. Br. (ECF No. 35). On October 14, 2022, the Court struck all the existing briefing (both the original and supplemental briefs) and ordered new briefing on the motion. Memo. Order (ECF No. 41). The new briefing has been filed.

## II. Arbitration Agreements

The loans both include an Arbitration Clause ("the Clause"), the focus of this Motion. The parties agree that the arbitration agreements are essentially identical (the only discernable discrepancy is a changed phone number). Exhibit A at A5-7; Exhibit B at B4-B6; see also Def. Memo in Supp. of Motion at 4 ("Memo") (ECF No. 42); Pl. Response to Motion at 3 ("Response") (ECF 43).

The arbitration components of the loans are lengthy. In the printed exhibits, they appear across three separate pages of the

2

nine-page (Exhibit A) and eight-page (Exhibit B) loan agreements. Johnson states that she signed the loan on a computer but did not read it before signing. Declaration of Sherie Johnson ("Johnson Dec.") ¶ ¶ 10, 15, & 17 (ECF 43-01).

The Clause is set out in tabular form. The far-left column of the table contains questions, the middle column contains short answers, and the far column includes the small print. Exhibit A at A5-7; Exhibit B at B4-6. The first row defines arbitration, in bold, as "[a]n alternative to court." Id. at A5, B4.

As written, the Clause applies to "all 'Claims' of one party against another. . . [and gives] the word 'Claims' the broadest reasonable meaning consistent with this Clause." Exhibit A at A5; Exhibit B at B4. The only exception is that claims "related to the validity, enforceability, coverage or scope of this Clause" will be decided by a court. Id.

The Clause explicitly states "**You waive your rights to: ...** **Have courts, other than small-claims courts, resolve Claims.**" Exhibit A at A5; Exhibit B at B4 (emphasis in original). In bold, underlined and capitalized text, the Clause prohibits any class actions. Id. The Clause requires that the "Arbiter will order any hearing near your home," Id. at A6, at B5, and the loan provider agreed to "advance the arbitration fees if you ask us in good faith. This includes filing, administrative, hearing, and Arbiter's fees," Id. at A7, at B6. The Clause also includes an

3

opt-out provision, allowing borrowers to opt-out of arbitration but still receive their loans. Id. Johnson did not attempt to opt-out of the Clause. Johnson Dec. ¶ 18.

The Clause is referenced in several other parts of the loan agreement. The first page of the loan agreement includes an **"ARBITRATION DISCLOSURE"** stating:

> **This Promissory Note includes an Arbitration Clause (the "Arbitration Clause"). In the event of a dispute related to this loan, your ability to have the dispute resolved in court is limited. You can "opt-out" of the Arbitration Clause as set forth below. Please review the Arbitration Clause carefully before signing this Note.**

Exhibit A at A2; Exhibit B at B2 (emphasis in original). On the final page of the loan agreement, the Clause is again referenced: "By signing this Note. . . You [the signer] acknowledge that you have read, understood, and agree to all the terms of this Note, including the **Arbitration Clause.**" Exhibit A at A8; Exhibit B at B7 (emphasis in original).

### III. *Choice-of-Law Clauses*

The loans contain a choice of law provision designating federal and Utah law as the governing law. Exhibit A at A3; Exhibit B at B3. The Clause itself is only subject to the Federal Arbitration Act ("FAA"). Id. The choice-of-law provision is separate from the Clause. It is on a different page and not

included in the tabular format used to set out the Clause. Id. It
reads in its entirety:

> **GOVERNING LAW; SEVERABILITY; INTERSTATE COMMERCE.** This Note
> is governed by federal law and the laws of the State of Utah,
> except that the Arbitration Clause is governed by the Federal
> Arbitration Act ("FAA"), 9 U.S.C. §§ 1-9. If any provision of
> this Note is held unenforceable, the remainder of this Note
> will remain in full force and effect, except as provided
> otherwise in the Arbitration Clause. You and we agree that
> the transaction represented by this Note involves interstate
> commerce for all purposes.

Id. (emphasis in original).


### DISCUSSION

#### I. Agreement is Governed by the Federal Arbitration Act (FAA)

Both parties agree that the Clause is governed by the Federal
Arbitration Act, 9 U.S.C. § 2. Memo at 6; Response at 8 (applying
the FAA framework). This is in conformity with the terms of the
Clause and language of the statute. See Exhibit A at A5; Exhibit
B at B4. The FAA governs any "contract evidencing a transaction
involving commerce." 9 U.S.C. § 2. This case involves a plaintiff
who is a citizen of Virginia and a defendant whose principal place
of business is Illinois. Compl. at ¶¶ 13-14. Therefore, the Clause
is properly governed by the FAA.

#### II. This Court may consider whether the Arbitration Clause is enforceable.

"Arbitrability disputes often necessitate a two-step
inquiry": 1) "who decides whether a particular matter is
arbitrable" and 2) if the court decides, "whether the dispute is,

in fact, arbitrable." Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 101 (4th Cir. 2012).

The first step is not disputed: it is the duty of the Court, not an arbitrator, to determine the validity of the Clause. And, indeed, the Clause explicitly provides that "claims related to the validity, enforceability, coverage or scope of this Clause" shall be "determined by a court." Exhibit A at A5; Exhibit B at B4. Neither party questions the Court's jurisdiction to decide this issue. Memo at 6-7; Response at 3. Thus, the decision is whether to enforce the contractual provision.

## III. Arbitration Clause is enforceable.

### A. The basic framework

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements," Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), and Supreme Court precedent "place[s] it beyond dispute that the FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011). Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. Thus, arbitration is fundamentally a matter of contract. AT&T Mobility LLC, 563 U.S. at 339.

The Fourth Circuit has outlined a four-factor test to determine whether the Court should compel arbitration:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quotation marks and citation omitted).

Only the second facet of the test, whether a binding arbitration agreement exists, is at issue. Response at 8-25. When determining if the arbitration agreement is indeed binding, the Court applies normal principles of state contract law. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); 9 U.S.C. § 2 (an arbitration agreement "shall be valid...save upon such grounds as exist at law or in equity"). An arbitration clause may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC, 563 U.S. at 339 (citation and quotation marks omitted).

When determining whether an arbitration clause is valid, the Court should bear "in mind that the grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole." Adkins, 303 F.3d at 502 (quotation marks and

citation omitted). And, it is settled that "a party may not cloak substantive contentions in jurisdictional garb to evade its obligations under an arbitration clause," and the Court "must not accept a party's invitations to critically appraise the merits of the underlying dispute." <u>Peabody Holding Co., LLC</u>, 665 F.3d at 96, 104.[1]

Upon finding a proper arbitration agreement, the Court is required to (1) stay the proceedings or, (2) if all issues presented are arbitrable, dismiss the action.[2] <u>Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.</u>, 252 F.3d 707, 709-10 (4th Cir. 2001). In other words, if an agreement is valid, courts "must rigorously enforce arbitration agreements according to their terms." <u>Am. Express Co. v. Italian Colors Rest.</u>, 570 U.S. 288, 233 (2013) (citation and quotation marks omitted).

**B. There is a binding arbitration agreement.**

*1) When assessing the validity of the arbitration clause, the Court applies Virginia substantive law.*

The FAA incorporates normal principles of state contract law to determine the validity of arbitration clauses. <u>First Options of Chicago, Inc.</u>, 514 U.S. at 944. In conformity with the FAA, the

---

[1] The Fourth Circuit has held that allegations of "usurious rates of interest" "cannot serve as a basis" to deny a Motion to Compel Arbitration. <u>Snowden v. CheckPoint Check Cashing</u>, 290 F.3d 631, 637 (4th Cir. 2002).
[2] The language of the statute only allows the Court to stay the action. <u>See</u> 9 U.S.C. § 3. However, the Fourth Circuit has held that dismissal is appropriate in the above-mentioned circumstance.

Court applies Virginia contract law to determine if the Clause is binding.[3]

When determining what law to apply, the Court should look to the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under Virginia law, "the law of the place where the contract was formed applies when interpreting the contract and determining its nature and validity." Dreher v. Budget Rent-A-Car Sys., Inc., 634 S.E.2d 324, 327 (Va. 2006). Johnson avers that she was in Virginia when she took out the loan. Johnson Dec. ¶ 2. Therefore, Virginia law applies to determining the validity of the Arbitration Clause. Opportunity Financial does not say otherwise.

2) The Arbitration Clause is valid under federal and Virginia law.

Plaintiff outlines two reasons why the agreement should not be upheld: (1) it waives her Racketeer Influenced and Corrupt Organizations Act ("RICO") claims; and (2) it is unconscionable under Virginia law. Response at 8 & 20. Neither argument is persuasive.

**a. The purported waiver of Plaintiff's rights under RICO does not invalidate the agreement.**

---

[3] Even though the contract contains a choice-of-law provision dictating that the note is "governed by federal law and the laws of the State of Utah," Exhibit A at A3, Exhibit B at B3, this provision does not apply to the arbitration clause. The choice-of-law clause specifically "except[s]" the Arbitration Clause from this requirement and instead states that the Clause is governed by the FAA. Id.

Johnson's Argument

Johnson argues that the "arbitration clause is void under federal law as an improper prospective waiver of federal rights." Response at 8. In dicta, the Supreme Court endorsed what the Fourth Circuit has come to hold – arbitration clauses combined with choice-of-law clauses can constitute prospective waiver in violation of federal law. Id. 8-9 (citing among others Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985); Dillon v. BMO Harris Bank, N.A., 856 F.3d 330, 335–36 (4th Cir. 2017)). Leaning heavily on the recent line of tribal lending cases decided by the Fourth Circuit, Johnson takes the view that choice-of-law clauses applying to the entire contract can be grounds for voiding arbitration clauses because the Clause prospectively waives her RICO claim. Response at 10-11. That, says Johnson, happens because of three provision: (1) the Clause states that the "Arbiter *must enforce* your *agreements* with us, as they are written,"[4] (2) the Clause says that "[t]he Arbiter must apply substantive law consistent with the FAA";[5] and (3) the Clause "mandates that '[a]ny rules that conflict with this Clause don't apply.'"[6] "[T]hese three provisions operate in tandem to constrain the arbiter." Id. at 13.

---

[4] Response at 11 (emphasis in original) (citing to Exhibit A at A6, Exhibit B at B5).

[5] Id. at 13 (citing to Exhibit A at A5, Exhibit B at B4)

[6] Id. (Exhibit A at A6, Exhibit B at B5)

The result of this constraint is that, if the case goes to arbitration, Johnson will be unable to bring either of her RICO claims because the Utah choice-of-law provision will be enforced. Response at 13. Utah law does not restrict usury rates while Virginia law does. Id. So, says Johnson, the loan would be lawful in Utah and unlawful in Virginia. Id. at 13-14. Therefore, Johnson concludes that she will have a successful RICO claim if Virginia law is applied but that she will have an unsuccessful one if Utah law is applied. Id. Therefore, because Utah law will be applied under the terms of the contract, Johnson argues that the three provisions to which she points operate to effect an "implicit" waiver of her statutory right to pursue a RICO claim. Id.

Opportunity Financial's Argument

Citing to Buckeye Check Cashing Inc. v. Cardegna, 546 U.S. 468 (2006) and Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), Opportunity Financial argues that the rule of severability prohibits this Court from considering the Utah choice-of-law provision because only the arbitrator, not the Court, can consider this provision. Memo at 12. That contention is predicated on the view that the choice-of-law provision explicitly does not apply to the arbitration agreement at issue. Id. at 14. Furthermore, Opportunity Financial rejects Johnson's contention that the arbitrator will be prevented from conducting an independent choice-of-law analysis to determine whether Utah or

11

Virginia law should apply to Johnson's substantive claims. Id. at 15. "Critically," says Opportunity Financial, "the need to apply substantive law consistent with the FAA does not limit the arbitrator's ability to conduct an independent choice-of-law analysis with respect to [Johnson's] substantive consumer protection claims." Id. at 17. The requirement for the arbitrator to apply "substantive law consistent with the FAA" should be read "as direction to render an award according to applicable law." Id. at 18. Because it is up to the arbitrator to conduct the choice-of-law analysis, the theory is that it is premature for this Court to determine if there is prospective waiver. Id. at 20.

Finally, Opportunity Financial asserts that, if Utah law is applied, the Clause does not waive any federal claims because federal law, in addition to Utah law, governs all claims under the choice-of-law provision. Memo at 21; see Exhibit A at A3, Exhibit B at B3.

Analysis

There is a prospective waiver doctrine, but it is not implicated here. In general, "parties are free within bounds to use a choice of law clause in an arbitration agreement to select which local law will govern the arbitration." Hayes v. Delbert Servs. Corp., 811 F.3d 666, 675 (4th Cir. 2016). One of those "bounds" is the prospective waiver doctrine. The Supreme Court has stated that a prospective waiver of federal statutory remedies

12

through choice-of-law clauses may be grounds for striking down an arbitration agreement. See Am. Express Co., 570 U.S. at 236. This is a narrow doctrine. It only applies "where an arbitration agreement prevents a litigant from vindicating federal statutory rights." Gibbs v. Sequoia Cap. Ops., LLC, 966 F.3d 286, 292 (4th Cir. 2020); see also Dillon, 856 F.3d at 334 ("courts will not enforce an arbitration agreement if doing so would prevent a litigant from vindicating federal substantive statutory rights").

Johnson, as she concedes, can pursue her RICO claim during arbitration. See Response at 14. Nothing in the loan agreement suggests otherwise. In fact, the choice-of-law clause in the loans explicitly state that federal law, along with Utah law, will apply. Exhibit A at A3; Exhibit B at B3. This is hardly a case where a "party. . . underhandedly convert[ed] a choice of law clause into a choice of no law clause—[the Clause did not]...flatly and categorically renounce the authority of the federal statutes to which it is and must remain subject." Hayes, 811 F.3d at 675. Recognizing as much, Johnson's argument instead focuses on her chance of success on her federal claims in the arbitration.

The argument is that application of Utah law, instead of Virginia law, would result in losing the RICO claims on the merits. This may be true. But, a plaintiff's chance of success plays no role in the analysis deciding whether arbitration must be had. The Supreme Court has upheld agreements to arbitrate before a specific

13

forum even if the choice of forum would change the outcome of the case, see Mitsubishi Motors Corp., 473 U.S. at 629-30, and it warned the lower courts against determining "the legal requirements for success on the merits claim-by-claim," Am. Exp. Co., 570 U.S. at 238. It is enough that the plaintiff is not barred from bringing her claim, even if it is bound for defeat.

Even if this Court was to find that applying Utah law would waive Johnson's statutory rights under RICO, it is premature to decide that issue due to the rule of severability. As articulated in Buckeye, it is a matter of federal substantive law that, "unless the challenge is to the arbitration clause itself, the issue of a contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445. Even if an arbitrator might later find a contract to be void, courts must still enforce arbitration agreements. Id. at 448. Courts have repeatedly reaffirmed that, under the rule of severability, challenges to contract-wide choice-of-law provisions should be heard by arbitrators, not courts. Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 541 (1995) (citation omitted) (Courts should "reserve judgment on the choice-of-law question" when considering a motion to compel arbitration "as [the choice-of-law question] must be decided in the first instance by the arbitrator"). This principle applies even when there is a concern about preclusion. Dillon, 856 F.3d at 334 ("When there is uncertainty whether the foreign choice

14

of law would preclude otherwise applicable federal substantive statutory remedies, . . . the prospective waiver issue would not become ripe for final determination until the federal court is asked to enforce the arbitrator's decision").

A recent decision by the United States District Court for the Western District of Texas in a substantially similar case is persuasive. Considering a motion to compel arbitration over a similar loan agreement, the court in Broussard v. FinWise Bank, Inc., determined that it was up to the arbiter to determine whether Utah law (under which the loan in question was lawful) or Texas law (under which the loan was unlawful) applied to the plaintiff's RICO claim. No. SA-21-CV-01238-OLG, 2022 WL 2057488, at *4 (W.D. Tex. May 12, 2022). In an identical procedural posture, the court determined that it was premature to consider the potential of applying Utah law. Id.

Challenging the Western District of Texas's holding, Johnson cites to a line of Fourth Circuit tribal lending cases that considered choice-of-law provisions as part of the preclusion analysis. Exceptions to the normal rule against considering choice-of-law clauses at this stage of the proceedings, the tribal lending cases are readily distinguishable. The cases which Johnson cites all concern choice-of-law clauses which expressly or implicitly preclude the application of federal law in favor of exclusively applying tribal law, a circumstance not presented in

15

this case. Gibbs v. Sequoia Capital Operations, 966 F.3d at 293
("Although such provisions do not explicitly disclaim the
applicability of federal law, they mandate the primacy and
effective control of tribal law in resolving any disputes arising
out of these agreements"); Gibbs v. Haynes Invs., LLC, 967 F.3d
332, 344 (4th Cir. 2020) ("because the language of both sets of
arbitration agreements provides that tribal law shall preempt the
application of any contrary law, and the effect of such provisions
is to thereby make unavailable to the borrowers the effective
vindication of federal statutory protections and remedies, the
arbitration agreements at issue amount to a prospective waiver");
Hengle v. Treppa, 19 F.4th 324, 339 (4th Cir. 2021), cert.
dismissed sub nom. Asner v. Hengle, 142 S. Ct. 2093 (2022) ("this
arbitration provision demands exclusive application of tribal law,
thereby preempting application of other authority"). Each of these
cases focus on the fact that tribal law, unlike state law, does
not incorporate federal substantive law. These cases further
reinforce that the prospective waiver doctrine only applies to the
waiver of federal, not state, statutory rights. Because the Clause
explicitly calls for the application of federal law, the tribal
lending precedents are inapplicable.

Johnson's interpretation of the contract provisions changes
none of this. *First,* Johnson takes issue with the clause stating
the "Arbiter must enforce your agreements with us, as they are

16

written." Exhibit A at A6, Exhibit B at B5; see Response at 11. It is difficult to understand how this innocuous phrase sparked the parade of horribles that Johnson articulates. Instead, this provision merely re-states settled black letter law. It is a "[f]amiliar principle[] of contract interpretation" that courts "must enforce the contract...as written." D.C. McClain, Inc. v. Arlington Cnty., 452 S.E.2d 659, 662 (Va. 1995); see also Winn v. Aleda Const. Co., Inc., 315 S.E.2d 193, 194-95 (Va. 1984); Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) ("The FAA...requires courts to enforce [arbitration agreements] according to their terms").

Second, Johnson complains because the Clause states that "[t]he Arbiter must apply substantive law consistent with the FAA." Exhibit A at A5, Exhibit B at B4; Response at 13. This, again, is merely a restatement of a clearly applicable legal principle. Because the case arises in interstate commerce, the Arbitration Clause at issue is governed by the FAA. That does not prevent the arbitrator from independently conducting a choice-of-law inquiry. Indeed, following the dictates of the FAA, the arbitrator is required to make an independent choice-of-law determination. See Vimar Seguros y Reaseguros, S.A., 515 U.S. at 540-541 (reserving the choice-of-law inquiry for the arbitrator). Importantly, Opportunity Financial has stated on the record that the arbiter

will be empowered to conduct an independent choice-of-law inquiry. Def. Reply at 11 (ECF No. 44).

*Finally,* Johnson objects to the provision stating that "[a]ny rules [of JAMS or the American Arbitration Association] that conflict with this Clause don't apply." Exhibit A at A6, Exhibit B at B5; Response at 13. Like the other two challenged provisions, this one too is permissible. As arbitration is a matter of contract, the parties can "specify by contract the rules under which that arbitration will be conducted." <u>Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 479 (1989). This clause does just that.

The fact that Johnson may have a harder time winning her claim if the case is sent to arbitration is not a basis for finding that the Clause is not valid.

> **b. The agreement is not unconscionable under Virginia law.**

<u>Johnson's Argument</u>

Johnson argues that the Clause is both procedurally and substantively unconscionable under Virginia law. Response at 20-21. Johnson's brief does not divide the analysis between these two types of unconscionability and, indeed, mixes the arguments

18

together.  Viewed  independently,  the  arguments  seem  to  be  as follows.

*Substantive  Unconscionability:*  Johnson  argues  that  "the inequality is conscience shocking" and that the Arbitration Clause "signs away all relief" by compelling "the arbiter to enforce the loans as valid under Utah law." Response at 21.

*Procedural Unconscionability:* Johnson outlines three reasons why the Clause is procedurally unconscionable 1) the loans are contracts of adhesion; 2) "the arbitration clause is three pages within an eight-page loan contract" and written in 4.5-point font; and 3) Johnson faced "economic pressure and lacked sophistication" when signing. Response at 21-22. Johnson also argues that the existence of an "opt-out" provision does not "magically" make an agreement procedurally conscionable. Id. at 23-24.

Opportunity Financial's Argument

Opportunity  Financial  takes  the  view  that  the  Clause  is neither substantively nor procedurally unconscionable.

*Substantive Unconscionability:* Opportunity Financial argues that the text stating that the arbitrator will enforce agreements is simply language advising the consumer of black letter law. Memo at 22-23. The  appropriate  interpretation  of  this  language  "is

plain: like courts, arbitrators manage the arbitration by enforcing agreements as written." Id. at 23.

As to Johnson's other points, Opportunity Financial argues that there is nothing unlawful about the Clause's prohibition on preclusion because neither Utah nor Virginia recognize the doctrine of nonmutual offense collateral estoppel and thus the failure to recognize this policy in the Clause cannot be against public policy. Memo at 24-25. In addition, any concerns that Johnson has about the future use of the outcome from this proceeding in other proceedings is purely hypothetical. Id. at 26. Finally, Opportunity Financial reaffirms the fact that the arbitrator will be able to conduct their own choice-of-law analysis just as a court would. Id. at 23.

*Procedural Unconscionability:* Opportunity Financial focuses on the fact that the Clause had an "opt-out" provision because of which the loan agreement cannot be considered a contract of adhesion. Memo at 10. In addition, Opportunity Financial rejects any argument that the Clause was hidden in the loan agreement or that the font size made the clause procedurally unconscionable. Id. at 11. It points out that the loan was electronically signed,

and that Johnson could have zoomed in to see the wording of the Clause in a larger font. Id. 11-12.

Analysis

Whether the Clause is unconscionable under Virginia law is indeed the closest question presented in this Motion. When evaluating unconscionability, the Court applies Virginia law. In Virginia, unconscionability "has both a substantive and procedural element." Lee v. Fairfax Cnty. Sch. Bd., 621 Fed. App'x 761, 763 (4th Cir. 2015) (per curiam). Virginia law requires a contract to be **both** substantively and procedurally unconscionable to be struck down by a court. Pelfry v. Pelfrey, 487 S.E.2d 281, 284 (Va. Ct. App. 1997).

The party, in this case Johnson, "seeking to rescind a contract on the basis of unconscionability has the burden of proving the grounds of unconscionability by clear and convincing evidence." Pillow v. Pillow, 410 S.E.2d 407, 408 (Va. Ct. App. 1991). Johnson fails to meet this burden.

*Substantive Unconscionability:*

Johnson argues that the Clause "signs away all relief because it compels the arbiter to enforce the loans as valid under Utah law" and requires the arbiter to enforce void loans. Response at 21, 25.

For a contract to be substantively unconscionable "[t]he inequality must be so gross as to shock the conscious" and one

21

that "no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." Smyth-Bros.-McCleary-McClellan Co. v. Beresford, 104 S.E. 371, 382 (Va. 1920); see also Flint Hill Sch. v. McIntosh, No. 181678, 2020 WL 33258, at *5 (Va. Jan. 2, 2020) (unpublished).

As explained above, "unless the challenge is to the arbitration clause itself, the issue of a contract's validity is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc., 546 U.S. at 445-446. The Court may only consider "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, West, Inc., 561 U.S. at 68-69. A "challenge to another provision of the contract. . . does not prevent a court from enforcing a specific agreement to arbitrate." Id. at 70

Johnson's first argument, the fact that the Clause compels the arbiter to enforce the loan as written, has no merit. The part of the Clause at issue states in its entirety:

> If these options [to find a mutually agreeable Arbiter] aren't available, a court may choose the Arbiter. Such Arbiter must enforce your agreements with us, as they are written.

Exhibit A at A6; Exhibit B at B5 (emphasis added).

For the reasons set forth above, this provision merely reiterates that the loans are legally binding agreements and nothing more. The Court cannot consider, as Johnson urges, whether

the underlying loans are usurious and thus void. That is because, even if the underlying contract will "later prove to be void," the FAA requires the Court to send the matter to arbitration. Buckeye Check Cashing, Inc., 546 U.S. at 448. As in Buckeye Check Cashing, Inc., "[t]he crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." Id. at 444. And, as did the Supreme Court in Buckeye, this Court must reject that challenge, refer the case to arbitration, and allow the arbitrator to determine the validity of the loan rates.

Johnson's argument inherently involves an attack on the Utah choice-of-law provision. But, in its analysis, the Court must not take into account the choice-of-law provision because it is separate from the Clause. Exhibit A at A3; Exhibit B at B3. It is located on a different page and presented in a different format from the Clause. Id. Indeed, even Johnson concedes that the Utah choice-of-law provision does *not* apply to the Clause on its face. Response at 14.[7]

It is true that some courts have considered choice-of-law provisions when adjudicating the validity of an arbitration

---

[7] Johnson confusingly words her brief and at times conflates the concept of law applied *to* determination the validity of the Clause and the law applied *during* arbitration. Johnson concedes that Virginia law applies to the Arbitration Clause but argues that Utah law would be applied by the arbiter during arbitration.

clause. However, these analyses are limited to when the courts are considering whether the preclusion doctrine applies. Gibbs v. Sequoia, 966 F.3d at 289 (only considering choice-of-law in respect preclusive waiver doctrine); Gibbs v. Haynes, 967 F.3d at 345 (same); Dillon, 856 F.3d at 335 (only considering choice-of-law "because that provision effects an unambiguous and categorical waiver of federal statutory rights"). The preclusion doctrine does not apply in this case, see supra III.B.2.a, and the Court may not consider the choice-of-law clause in deciding the validity of the Clause.

None of Plaintiff's proffered reasons make this arbitration agreement substantively unconscionable. That alone is sufficient to foreclose this claim of invalidity. Nonetheless, to make the record complete, it is appropriate to assess the procedural unconscionability argument.

Procedural Unconscionability:

Under Virginia law, procedural unconscionability

necessitates inequity and bad faith in "the accompanying incidents..., such as concealments, misrepresentations, undue advantage, oppressions on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like."

Lee, 621 F. App'x at 763 (quoting Chaplain v. Chaplain, 682 S.E.2d 108, 113 (Va. 2009)). When conducting the procedural unconscionability analysis, Virginia courts deal "primarily with a grossly unequal bargaining power at the time the contract is

24

formed." <u>Envirotech Corp. v. Halco Eng'g, Inc.</u>, 364 S.E.2d 215, 220 (Va. 1988).

Johnson is correct that the loans are contracts of adhesion. Response at 21. Virginia defines a contract of adhesion as a "standard-form contract prepared by one party, to be signed by another party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms." <u>Flint Hill School</u>, 2020 WL 33258, at *5 (quoting Black's Law Dictionary 403 (11th ed. 2019)). Under this definition, the contracts at issue are adhesive. And, although Johnson did have the opportunity to opt-out, she still had "little choice" about the terms of the contract.

However, this finding is not dispositive because, when determining if a contractual provision is procedurally unconscionable, whether the contract is a contract of adhesion is only a "relevant factor." <u>Flint Hill School</u>, 2020 WL 33258, at *5. But, "such contracts are not unconscionable per se." <u>PHC-Martinsville, Inc. v. Dennis</u>, No. 161019, 2017 WL 4053898, at *2 n.4 (Va. Sept. 14, 2017) (unpublished). Indeed, as "the times in which consumer contracts were anything other than adhesive are long past," <u>AT&T Mobility LLC</u>, 563 U.S. at 346-347, any rule

25

automatically declaring adhesive contracts unconscionable would throw significant disarray into modern life.

On the other hand, the opt-out provision does not automatically save the loan as Opportunity Financial hopes. Solomon v. Am. Web Loan, 375 F. Supp. 3d 638, 672 (E.D. Va. 2019) (finding an arbitration provision unconscionable even with the inclusion of an opt-out provision). Nonetheless, the inclusion of an opt-out provision is a fact that the Court can consider and weigh heavily. Hawthorne v. Bj's Wholesale Club, No. 3:15CV572, 2016 WL 4500867, at *6 (E.D. Va. Aug. 26, 2016) (memorandum opinion).

When looking at contracts of adhesion, Virginia courts consider whether the complaining party had a meaningful choice in deciding to sign the contract. In this case, Johnson has not shown that she "could not have simply walked away when confronted" with the Clause nor has she shown that she "even attempted to bargain" with Opportunity Financial about arbitration. Fries v. Myers & Fitness Int'l, LLC, 106 Va. Cir. 335, 5 (2020) (unpublished), see also Hawthorne, 2016 WL 4500867 at *6. In fact, Johnson could have

gone to other loan providers to get a loan and, indeed, she says that she did consider other lenders. Johnson Dec. ¶ 6.[8]

Moreover, even after having decided to accept Opportunity Financial's loan terms, Johnson had the option to opt-out of the arbitration provision. Exhibit A at A7; Exhibit B at B6. She does not argue that she was "incapacitated or otherwise unable to appreciate the gravity of the Arbitration Agreement and make a deliberate choice regarding [her] option to opt out of it." Hawthorne, 2016 WL 4500867 at *6 (citing to Lee, 621 Fed.App'x. at 762). Because she had the option to go elsewhere or to opt-out of arbitration in its entirety, the fact that this is a contract of adhesion is not enough to make it a procedurally unconscionable contract.

Johnson's next argument is that the length of the agreement and its font make it unconscionable. Response at 21. The font of the contract can and does give the Court pause. The Clause is set out in small and difficult to read font. However, the font is not impossible to read. As Johnson concedes, "no statute sets a minimum font size" for this contract and Johnson does not point to any decisional law supporting her contention that the font size supports a finding of procedural unconscionability. Response at

---

[8] She argues that she did not have other option, because "the other lenders I found would not give me a loan." Johnson Dec. ¶ 6. That, however, is not the point. Nothing forced Johnson to sign the loan with Opportunity Financial.

22. This argument is really an attempt to excuse the fact that Johnson did not read the contract before signing. Johnson Dec. ¶ 17 ("I did not read either of the contracts. They were long and in extremely small font. The small font made it *almost* impossible for me to read.") (emphasis added).

Virginia courts are not sympathetic to parties who do not read contracts before signing them. A party "having the capacity to understand a written document" is "bound by his signature" unless he can prove "fraud, duress, or mutual mistake." Metro Realty of Tidewater, Inc. v. Woolard, 286 S.E.2d 197, 200 (Va. 1982) (quotations omitted). This applies even if the complaining party did not read the contract. Id.

In this case, Johnson had access to the contract by way of her computer and could have read the contract, but she chose not to read it. Johnson Dec. ¶¶ 8-10. The Clause is referenced in numerous places throughout the contract, including in bold text. The Clause is hardly hidden—it takes multiple pages and is formatted as a table. Each of the Clause's provisions are defined in plain English. Though the text is small, the questions and plain English answers are bolded. The fact that Johnson *did not* read the contract does not mean that she *could not* read it.

Finally, Johnson argues that the contract is unconscionable because she "faced economic pressure and lacked sophistication" when she signed. Response at 22. Although Johnson characterizes

this as part of her unconscionability analysis, it really is a duress argument.

Under Virginia law, "duress is not readily accepted as an excuse," Seward v. Am. Hardware Co., 171 S.E. 650, 662 (Va. 1933), and "exists when a defendant commits a wrongful act sufficient to prevent a plaintiff from exercising his free will, thereby coercing the plaintiff's consent," Goode v. Burke Town Plaza, Inc., 436 S.E.2d 450, 452 (Va. 1993). "A contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of the fact is not a contract executed under duress." Seward, 171 S.E. at 662. Johnson can point to no "wrongful act" committed by Opportunity Financial and therefore her (thinly veiled) duress argument must fail.

Each of the procedural unconscionability arguments fail.

**III. If the Arbitration Clause is upheld, each of Plaintiff's claims fall under it.**

While state law governs the formation of contracts, federal substantive law governs arbitrability. See Moses H. Cone Memorial Hosp., 460 U.S. at 24-25. When determining if arbitration is warranted, the "[f]ederal courts have developed a robust presumption in favor of arbitrability," Peabody Holding Co., LLC, 665 F.3d at 103, and "federal policy requires that ambiguities in arbitration clauses be resolved in favor of arbitration," Choice Hotels Intern., Inc., 252 F.3d at 711. Under federal law, "the

party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." <u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 91 (2000).

Johnson makes no attempt to argue that, if the arbitration clause is upheld, any of her claims should stay with the Court. Response at 29. Because the presumption is that claims are arbitrable, all claims will go to arbitration.

### CONCLUSION

Both parties agree that, if the Arbitration Clause is upheld, the Court should dismiss the case without prejudice. Memo at 29; Response at 29.[9]

For the foregoing reasons, the MOTION TO COMPEL ARBITRATION (ECF No. 17) will be granted and, as the parties suggest, the case will be dismissed without prejudice.

_____ /s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  March 24, 2023

---

[9] Opportunity Financial states, in the alternative, that it is also appropriate for the Court to stay the proceedings. Memo. at 29.